This is case number 4-24-0711, City of Beloit v. New Chapter Group, Inc. et al. Counsel, if you could state your appearances, first for the appellant. Temporary for the appellant. Thank you. And for the appellate? There is no argument on behalf of the appellant. Okay, thank you. Mr. Brady, you may proceed with your argument. Good morning, Your Honors, and may it please the Court. I want to take a moment and just say you probably saw from the docket that I am a late addition to this case, just as of the end of last week. So I have spent the weekend studying diligently, like I did in law school, and I just want you to know that I'd appreciate it if you'd grade on a little bit of a curve. I understand the lawyer that was going to argue this as a trial in Rockford today cannot be in two places at one time, and those are all issues that happened before I came onto this case, so I just leave them be. New Chapter Group owned and operated a hotel for several years in South Beloit. In 2019, the City of South Beloit filed an administrative case against them for ordinance violations, and the City also banned anyone from entering the property at that time. They put a condemn notice up on the door. In mid-2019, the administrative judge entered a written order dismissing that case, but the City continued to prohibit any entry to the property by the owners, their staff, or their contractors. The City also failed to provide any specific issues that needed to be addressed at the hotel for more than three years. In 2022, New Chapter Group owners reported the City of South Beloit attorney, Clayton Zamudio, to the ARDC for practicing law without a license. The ARDC investigated that, and then I think they found that he was, but they didn't do any penalty. At the time, the City attorneys were trying to force the owners to walk away from the hotel and deed the property to the City in exchange for a waiver of a fine at that point of about $2.7 million. Was that a recommendation of the City, or merely one of the many options offered? I think that was kind of the only option offered at that point, but I don't have any more. How does that manifest? In what way did that request make its way to your client? So my understanding is in the summer of 2022, the City essentially said, you know, we can take care of this if you pay an outstanding fine and deed the property to us. So who made that statement? What document was that conveyed in? Where do you extract that statement from? That's from my understanding of the testimony of the owners. My understanding at the point at that time, the City had, for some time, had an interest in putting a new City Hall at this location. So, on July 12th, 2020... Is that a fact in the record? I do not know. On July 12th, 2022, ARDC informed New Chapter Group that they were not going to file a formal complaint against him, and then 24 days later, attorneys for the City filed this civil case in Winnebago County Court. The City filed a complaint seeking demolition and municipal fines in 2022. The trial court ultimately held a trial and ordered demolition of the building and imposed an $8.5 million fine. In the record, you'll find that approximately there's various testimony, but about a half a million dollars was suggested for demolition, and at one point, the City engineer said roughly a million and a half dollars to repair the hotel up to standard. There's not a lot of testimony on it, but it's in the record. Obviously, that is significantly different than the $8.5 million fine, and realize a lot of this fine is based on a period of time when essentially nothing was being done on this case. There really was no case because they had dismissed the administrative side of it, and we were going through COVID, and so the City was not being particularly active in its pursuit of this. In terms of the length of time that the case remained pending, there's a dispute as to whether or not ownership was allowed access to the hotel. What's the best evidence that you can point to that ownership was prohibited from entering the building at all, putting aside what it means to ... I don't even think the word occupied was used, but the City indicates that the prohibition was against residency. What's the best evidence that you have that indeed the City prohibited any access to ownership to the building? Thank you, Justice. I think there's several, actually. Number one, Dr. Jung, who was one of the owners, testified that they wouldn't let anybody onto the property after essentially mid-2019, actually the spring of 2019, I think it was March, was when they first put the notice up. You also had ... I think it's Shawna Hamthorne, or Honthorne, is the person with the City of South Beloit. I believe she has testimony in there that is contradictory to herself, where she says that no, people weren't allowed on the property. You had two folks that were employees of the group that live there. One was the on-site manager, and one was the security. Both of those were ordered off the property in 2019. I'm trying to think there's a fourth one that might come to mind. I wouldn't say the record is replete with instances on ... I think that was a big part of the trial, to be honest. It's tough to figure out why it is nothing was done on this particular ... There's basically a dearth of any communication after that dismissal, the administrative complaint. I'll be honest with you, there's not clarity of the city telling my client, hey, you can't be there, but there is definitely my client saying, I thought you couldn't be there because you guys ordered us off. We had that administrative case that might have had a prohibition on being on the property along with it. I think part of the city's options that were laid out to ownership was remediation, right? My understanding is that the city obviously argues, well, you could have remediated any time. We didn't mean the prohibition on that. To my clients and what they understand, keep in mind, both of my clients have Chinese background. There's a little bit of a disconnect here on some of the things. They took the $2.7 million, frankly, from the city offer as a threat. I tried to explain to them that's how municipal law generally works in a nice way. You have a situation where they didn't feel that they could send anybody. They'd lost their maintenance guy at this place. They'd lost their onsite manager. They were not there. The city wouldn't let them go on. The city certainly never sent them anything clear saying, hey, you can remediate. The city was never clear for three years, you've either got to fix these issues or you've got to remediate or we're going to file a civil suit because ... I'm sorry. When you say that they weren't clear about that, at the very beginning, didn't they offer up four options, remediation being one of them? Frankly, I apologize. I can't remember how that was communicated, but it was very specific in terms of the four options that were being presented to ownership there, remediation being one of them. Again, how can one conclude that remediation is being suggested by the city and yet it's being received as communication that no one is allowed on the property? The two are inconsistent with each other. I see your point, but I believe the city at one point communicated that remediation should be done as a menu of options. I believe their actions from 2019 all the way through 2022 was if anybody went on the property, they chased them off. They were told not to be ... I think they had contractors go there that were chased off. I think that's in the record. I apologize. I've read ... Let me ask a question with regards to that. On March 25th of 2019, is there any invoice or other evidence other than Mr. Zeng's testimony that the workers were actually pumping water out of the basement on that date? I don't have any knowledge of that. You're familiar with the field investigation report? I'm sorry, Your Honor. You're familiar with the field investigation report?  I think it was an important part of this case. It seems to make clear that New Chapter were allowed to go into the hotel for the purpose of making repairs, just not for the purpose of occupancy. Would you agree with that proposition? I would not necessarily agree with that. It does show, though, that Linda and Lou, the two people who worked for New Chapter, were prohibited from being in there. I believe that's in there, too. Prohibited from occupying? Yes. Not living there, basically? Well, I don't know that that was ever made clear. I don't honestly know if that was clear with my clients, given their ... Keep in mind that that field report is something that was internal to the city, and wasn't disclosed until years later in a FOIA request. That was not something that was ever known in 2019. Maybe it cuts against my client in one way, but I do think it cuts against them in another way. There were notices of code violations, report of violations, things of that nature. Have you had the opportunity to review those with your client? You've been the attorney, and I understand there's an argument that there could be maybe a barrier as to understanding what was communicated on the client's behalf, but certainly there seems to be in the records some pretty clear explanations that it was occupancy, not remediation, that was prohibited. Well, your honors, I would say that if somebody told me you can't occupy it, even I would say you can't be there. Now, if you told me you can't occupy it by living there, but you can remediate it, if you made it that clear, I would see where you're coming from. I do not believe the city ever made it that clear in any way. And this building deteriorated greatly over this time. Oh, yeah. So in March, keep in mind, from 2013 when they bought this place until 2019, there are no ordinance violations at all. I don't think there's anything from the city that ever came about. I asked my client about this specifically this morning. I said, am I right on this timeline? They didn't come and visit you until March of 2019 when there is an issue with the pool. Some kids get sick, but the adults don't get sick. And then the investigation is there's nothing wrong with the pool. And so that's the beginning of this. So I don't think they ever found any kind of medical issue with the pool. The health department came out and checked it. At the same time, they did find some things with like water in the basement and some other minor issues. There was a roof issue that they just cleared out leaves from a drain up on the roof. But again, these are not nowhere. Now, later in the record, you'll find a whole bunch of photos in 22-23 that are really ugly stuff because the place had deteriorated for another four years. But none of that was provided in 2019 or even in 2022. That's all stuff that came, I believe, quite a bit later after they had done a search warrant and said that they were in the hotel. So it's not like my client ever had any kind of listing of what was wrong with the hotel that they were going off of other than being given a whole long laundry list of ordinance violations from the code and just basically literally copying the codebook and saying, you know, two high weeds or whatever it is, whatever it reads. But it's not saying, well, there's two high weeds in the front yard or whatever. There's not anything saying there's water in the basement at the time. There's no road map to fix these problems. And then the case gets dismissed in the summer of 2019 anyway. So it doesn't matter whether there was a road map or not or there were even things that ever pointed out. The case was over at that point until it restarted. And it didn't restart, essentially, in any serious way for a number of years. So I don't know why the city didn't reach out to these guys and say, you know, you've got to make sure this place is up to snuff or this is going to be a problem. Because for three years, this kind of just languishes. And I can see where, you know, I've been a musical law lawyer for over 20 years. If I don't talk to somebody for three years and their property falls apart, a little bit, in my opinion, is on me. And if I ban them from being in the property, or they believe I'm banning them from being in the property, I think it's my duty to tell them, guys, you need to get in there and fix some of this stuff or it's going to be a real problem. How do you deal with Ken Thorne's testimony? She watched the two employees taping the doors. I think they were taping the doors shut, but also had a statement there wherein the hotel was closed for repairs and that they would keep folks updated as to the repairs and when they were finished. Doesn't that impute some type of knowledge that repairs could occur and that they were welcome to do so? I would think so, but I would think that was in 2019 and then the case ended up being dismissed later. I mean, again, there's almost like three cases here. There's the first half of 2019, then there's this long gulf between mid-2019 and 2022, of which there's very little that happens. Very little in the record, very little that I think actually did happen. I don't think there's some trove of anything out there. I think it just kind of sat. I think partially that's due to COVID. As I've looked at this, without casting too many aspersions, the fact that the city decided to go in and get an EPA grant for remediation on a hotel that was running fine and had no ordinance violations prior to 2019 suggests to me, I mean, they have a press release where they talked about the fact that they're going to the previous mayor that was prior to 2019. They had us plan to redevelop this place. I think the city pushed these guys over the edge so that they could take the property. And is any of that in the record? Here and there, if you read into it. Not very well aware that's in the record? I wouldn't say it's obviously in the record, no. Well, you just made the statement that it's there, here and there. So if it's here and there, where can I locate that in the record? If you have done municipal law for 20 years, I see a pattern that while I think it's courageous. My question is, is it in the record? No. With regards to the complaint, the argument on appeals, the circuit court should have ruled a new chapter's favor on the affirmative defense of unclean hands. Is that correct?  How is that theory available when we're talking about whether or not there's equitable relief? So are you suggesting that when the authorization to demolish the hotel, the imposition of municipal fines was equitable relief sought? Well, I mean, just in general, their behavior in this, I think, was I think the city did things to push this into a high fine situation and get either a judgment against them or push them over the edge and sell the property and get it deeded to them. I mean, that's, in my opinion, that's the unclean hands issue. And I know unclean hands normally doesn't lie against municipalities, but I Well, what about in an action such as this? The city's not requesting equitable relief. Well, I mean, I think it's unclean hands to sit on your hands for three years and not take this case forward. But unclean hands is a defense that you're asserting comes into play here, but only, isn't the law that it's only available if a claim is being made in equity? I have not researched that. I'm sorry, Justice, I don't know. You know, I think, in this, I think the due process issues are a problem. And I think the reality is that I think the city started with an administrative remedy. It's in their code. They chose under the municipal code to add that administrative remedy. They don't have to do that. When I was a municipal lawyer, I never put an administrative court into any of my municipalities because I found that it got in my hands. So I generally would go to a civil court if I had ordinance issues. Now, that's what they ultimately ended up doing. But my understanding is, and I believe that the case law is not clear in this particular issue, but I think it is clear in administrative remedies in general. If you adopt an administrative system and then you don't follow that, you follow that administrative system and then you basically sideline it, for no reason that anybody can figure out. We don't know if it was dismissed voluntarily. There's nothing in the record that says that's what it was. Very little paperwork on it. It's just dismissed. I think my client can rely on an administrative procedure being dismissed by getting a written paper saying it's dismissed and not thinking that he's got anything wrong there and then just questioning himself, I don't understand why my people can't go back on this property. Because they were run off after the summer of 2019 in varying ways. And there was basically no communication. For the city to sit on this for three years, I think, is absolutely atrocious. What about in November of, I guess it was 19, sorry. So in November of 19, the city attorney, Zabo, there's conversations or there's correspondence, I should say, between he and your client. And in that correspondence, there's discussions about the ability to allow for your client to rehabilitate the building. How do you explain that evidence? Well, I don't think there ever was the opportunity to rehabilitate. I don't think they ever let him back on. I think Zabo, I don't know if Zabo was licensed at that point, but there was a point that he obviously wasn't licensed. I'm not sure that should even be considered if he was an unlicensed attorney. But even if he was, he needed to be, and there's nothing wrong with an attorney reaching out to a property owner and saying, hey, you've got to do one of these things. And one of them is we're going to fine you until we put a lien on it and take the property. I've done that and you missed the law. That happens a lot. Well, but my question is another thing is, hey, you're going to rehabilitate that property? That's also an option. Oh, yeah. I think, I don't, these guys didn't want to close the hotel. It was running, it was open and running. It had a management company and people living on site managing it in the spring of 2019. And they basically get their lips cut out from under them on an issue. It seems to me that it cuts against your client in that they were on notice that one option is to rehabilitate the building. May I have 20 seconds just to answer that? Briefly. I don't disagree with you. Like all cases, it usually cuts both ways. But in this case, I think the government, especially with the raw power that it has to be able to foreclose on and demolish a building without any appellate review prior to doing it, which is what happened here. I think that immense amount of power that is given to the municipality has to be tempered with. The responsibility is on them. It might cut both ways and different facts on this case. But at the end of the day, the municipality has to do it. If they're going to be given that much power, the ability to do it, absolutely right. Thank you. Okay. Thank you, Mr. Gray. You'll have time for rebuttal. Mr. Miller, you may proceed. Justices, opposing counsel, may it please the Court. The appellee is here today asking you to affirm the decision of the Circuit Court of Winnebago County in its entirety. This case is about one thing and one thing only, public safety. That is why the General Assembly gave us Section 11-31-1 of the Illinois Municipal Code governing the demolition of properties within a municipality's territorial limits. So it was a safety issue, a matter of urgency, public safety must be guarded? That's correct, Your Honor. I've been three years of nothing. During that three-year period, it's undisputed from the record that the year 2019, there was a lot going on in this case. Lots of notices, hearings. Within that timeframe after that, it was an opportunity for the landowner, for the appellant, to take action on their own. Specifically, I want to point to the email from November 22nd of 2019. There was a meeting at City Hall that the appellant attended. And everything was laid out for them, all the code violations. We gave them opportunity until October of 2021 when the city executed an administrative search warrant that we obtained. Four and a half years since the initial notice went out, the appellant chose not to even pull a permit. We had one meeting where we sat down and discussed this. This idea of the city pursuing administrative remedies and then dismissing the case. The Illinois Municipal Code allows us to do that. The case was not, there was no hearing on the merits at the code case. The appellant didn't show up for the case. So the administrative law judge didn't just dismiss the matter and then we pursued it in circuit court under the demolition statute. Counsel, it just seems to me the period of time that we're talking about that it passed, it cuts against the argument that this was a matter of urgency for the city. Instead, it appears the city just sat back and in the end requested and received as a judgment $8.8 million in fines that came about because of that lengthy period of time. What's your response? Your Honor, I understand the length of time that existed here between the end of 2019 and October of 2021. If you look at Exhibits 117 through 150 in Volume 1, the city conducted several inspections during that time. And we noted that no repairs were being made during the year of 2020. That's what led us then to go in later in 2021 to get the administrative search warrant. There were calls for service to the property. At that point, we had to move forward. The municipality can hold the landowner's hands so much. But at some point, it's incumbent upon the landowner, when they have notice of the violations, to start taking steps to do that. And that's what this record does not have in it. That's before you today. Four and a half years of inaction by the appellant, which then unfortunately forced the city's hands to go into circuit court. The city doesn't want to go into circuit court and ask a judge to demolish one of the properties. In its town. There's great deference in making that decision. Property rights are very precious. And only after a very specific court hearing, in this case four days of testimony, determining this case on questions of fact and not questions of law, which a lot of demolition cases, either within or without this district, are determined on summary judgment. Demolitions are very, very fact-sensitive cases. And in this case, there was no qualified testimony on the appellant's side as to the conditions of the building. The cost of repair to the building. The Supreme Court in Village Lakeville v. Stokovich makes it very clear that the first problem that the city has to meet is that the building is dangerous and unsafe. The city had numerous... Counsel, if I may, though, circling back to the point Justice Harris has raised, and you mentioned on October 15th of 2021, your civil engineer indicated and testified that he participated in the execution of the administrative search warrant. But nothing is filed until nearly a year later. And so while you talk about these being opportunities, I mean, at that point, with that administrative search warrant, you find there's mildew, you find there's 50 large windows that are broken out. I mean, it seems readily apparent to me at that moment, at the conclusion of that report, that nothing is happening. So what reason does the city provide? And what is in the record to suggest why then it's almost a year later before they file suit? Because that just seems like a delay at the point where it's readily apparent that nothing has occurred. Your Honor, there were additional inspections that were conducted in early 2020 and early 2022. They were in February, in July, and in October of that year. And there were proposals that were obtained for demolition. Those were obtained, I believe, by the OPLON. And nothing was ever acted on. So you're suggesting that during the time from October 15th of 2021 until the time the case was filed, there continued to be multiple discussions with the appellant, and they were obtaining quotes, and you were having these discussions? I guess I'm trying to sort out why at that point. I mean, it's fine that there's additional inspections. But at this point, it seems we've already been having inspections for the year, two years prior to that time. So I guess I just don't understand why that wasn't enough to move the needle at that moment. So what other basis is there in the record for me to understand that? Other than the inspections that are in there and the emails that are in there, I don't believe there's anything else in there that would discuss the length of time, to be perfectly honest. So looking at the demolition statute, this case was not determined on summary judgment, like a lot of other demolition cases are. I mean, because this is so fact-sensitive, making a decision on summary judgment is asking for a case to be brought here, because of the nature of these cases. There's four standards of review, and I think this is very important in this case. There's four standards of review that we use here in the reviewing courts. Use of discretion against the manifest way of the evidence, clear error, and de novo. Those cases are all determined as a matter of law, because no genuine issue of material fact exists. Those are all de novo reviews. Those are all the most basic reviews. Here we have witness testimony, evaluation of the exhibits, weighing of the credibility by the circuit court. After a 4A trial, we had a decision. There were questions of fact that were decided on the merits. That brings us against the manifest way of the evidence standard here, and that's what the appellant has to show. So they have to show that the decision that was made by the trial court here was either the absolute conclusion was apparent, or that the decision of the trial court was unreasonable, arbitrary, or against, or just not based on the evidence. The very high standard for the appellant to meet here, when you, as the city, provide all this testimony, code inspectors, street superintendents, building inspectors, people that are all qualified to testify to the condition of the building, that's all uncontroverted testimony in this case. The other problem that we have to look at here for the demolition statute, was very aptly set forth in the city of Aurora versus Meijer, that the building is beyond reasonable repair. In 2021, the city engineer, Seth Braunwald from Fairground, who gives opinions of probable cost every day, he's given hundreds in this court, determined that the cost to repair the property was $4.5 million. And when the case was tried, his opinion was $7 million. And the appellant brings up in their brief, oh, well, he didn't get any bids. So his number is clearly erroneous. Mr. Braunwald was qualified as an expert in the case. It's his job as a municipal engineer to give these types of opinions. A very good example we use is every municipality gets MFT funds, or municipal fuel tax funds. Those can only be used on road projects. When bids are obtained to comply with state law, the engineers have to give an opinion of probable cost. So the municipality knows they're picking the most responsible bidder. So for Mr. Braunwald to provide his opinion in this case, his expert opinion, is enough. The appellants provided no testimony. They didn't bring an expert. They didn't have anybody testify as to whether the building was beyond reasonable repair, as to the cost of repair. As the Supreme Court told us in Meyer, if the cost of repair amounts to a substantial reconstruction, demolition is proper. If the cost of repair is reasonable, then the repair route should be followed by the court. I'd like to ask you a question unrelated to what you're speaking about here. So please bookmark where you're at. You can get back to it after this. But in your break, you asked the court to take judicial notice that the building that was subject to the demolition order has been demolished in accordance with the terms of the order. How do we take judicial notice of that? Where do we go to to confirm demolition of the building? Unfortunately, there is no... other than a physical site inspection, there is no way to confirm that, unfortunately. Well, judicial notice would be by way of some official document or record. Correct. Is there any such official document or record or simply your suggestion in the brief that the building has been demolished? That is correct. There is invoices that have been submitted to the village so that we can record our demolition lien. But in the actual court record itself, no, there is no physical documentation of that. Okay, thank you. Your Honor, just to follow up on that, the city moved forward with demolition because under the order by Judge Barch from Winnebago County, the Avalon had 30 days to demolish the property. They elected not to do that. During the time for which the Avalon could file their notice of appeal, they did not comply with Supreme Court Rule 305. And no time was a stay ever sought in the circuit court. And even after the time for filing the notice of appeal, there was never a motion brought in this court seeking that. But had they brought a motion, they would have had to explain why they didn't seek the stay in the trial court. Additionally, there was never an appeal bond for the monetary judgment. I know an appeal bond is not necessary for the demolition aspect of it, but the court could order some security, especially for the cost of demolishing the building. But again, none of that was complied with. So at the end of the day, when you're looking at the standard of review that this court is going to apply to this case, there's just not enough in the record to say that the decision was arbitrary or not in accordance with the evidence or unreasonable. Most of the evidence in this case was uncontroverted. The Avalon's never took a single step other than a handful of meetings to comply with any of the options that were provided to them. Could the city have acted faster? Sure. Looking back on it with hindsight, sure. We could have acted faster. But we didn't. But at the same time, even though there's no equitable relief sought here because this demolition statute is not equitable relief, as Your Honors were questioning the Avalon about, this is a very specific action that's filed in circuit court. The fact that the defendants sat on their rights, or the Avalon's sat on their rights, almost smelled of a lachey's argument, too. So to afford the Avalon all of the benefit, I think is inequitable in and of itself. So again, for the reasons that most of the evidence in this case was uncontroverted, and that the requirements of 11-31-1 of the Illinois Municipal Code and the demolition requirements that were set forth in Stokovich and Meyer believe that the burden of proof was clearly met by the city in this matter, and that this court should affirm. The circuit court's judgment in its entirety. Thank you. Okay. Thank you, Mr. Miller. Mr. Gray with the whole argument. Mr. Gray, I'll ask a question here. Sure. Proceed. Has the building been demolished? Well, I can't testify to that because I haven't seen it. So I don't know. In the certainty we just talked about, I don't. I know that's been referenced, but I can't. I don't know. I don't know what – I see your point on that, but I also see we don't really have a way to – I don't think you can take judicial notice of it. I don't see that there's a document in a government record or a contemporary news report or something that you can take judicial notice of from that standpoint. So I don't know. I think I do know, but I don't know with 100 percent certainty that I can testify or tell you to this day. Let me just say, you know, we're talking about 1,161 days. Justice, you hit on the issue that maybe this – you know, I understand governments don't work real fast sometimes, and there's nothing inherently wrong with that, I think, as long as there's continued communication. But we're talking about years. And while the counsel says, well, the record's mostly uncontroverted, the record is also very bare for long, long periods of time where there really wasn't any communication going about on this thing. And regardless of what the facts are, I think there are serious legal issues here that I do think properly belong before the appellate court and that you guys have to know full review, especially on this issue of administrative remedies. I mean, this is a situation where the city decided to go down the administrative route, and somewhere along the line they closed it and didn't explain why they closed it. I don't even know how you could close an administrative case if you don't have any paperwork from the city as a party to its administrative law judge to say we'd like to voluntarily close this. Otherwise it looks like they're just another employee of the city, which, of course, sometimes they are. But, you know, I was just looking at it. I don't have a lot of the record in front of me, but I'm looking at one of the record pages, which is, I believe, E14. And this is from the health department. This is a draft. Apparently they never could find the actual letter that supports this at some point. But I just point out that it says the city's basically saying, well, it's from the health department of the county, but they're acting as a dual agency to do the investigation. The premises was condemned in accordance with Chapter 18, et cetera, because it's damaged and dilapidated, hazardous premise, unfit for human habitation. Okay. Those are the reasons that you would do that, but you have to have facts that show here's what needs to be fixed to be able to bring this back into use. And there's just nowhere, not in the administrative level, not in the court case that goes forward, they never really write out, hey, you've got to fix these windows. Now, there's pictures of stuff late, late in the process. But that, again, is like 2022, 2023. That's really late in the process. Before going past that, wasn't there an email November 22, 2019, where the code violations are identified by the ordinance provision? And then there is a description as to what it is that's claimed to be violative of the ordinance. No numbers anywhere on the building. Building is dangerous to the public health because there is stagnant water in the basement. I mean, that's 2019, right? In 2019, well, again, my client had been blocked from the building at that point in 2019. This is just as to your point where you were saying that there was no description of the conditions that needed to be remedied. I also think that the city representative that testified said she wasn't in the building to even say those things. They didn't search inside the building, I think, until, again, years later. There's a lot of inconsistencies here. In a weird situation where we have a jury demand that is file stamped into this court case, but then it was never talked about by the court and never either denied or whatever. It should have been a jury on this. The court reporter wasn't licensed. The parties had a stipulation for both parties to use a live court reporter. The court reporter ends up being unlicensed, and so the judge decides, well, I'm just going to go with the electronic recording, and that's odd. The attorney is unlicensed. I think there was a very serious duty on the part of the city to do a better job on making sure that this was properly due process followed. I leave it to you. Thank you for your time. Okay. Thank you, Mr. Gray. Thank you both. The case will be taken under advisement, and the court will issue a written decision.